UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Magneti Marelli Powertrain USA LLC, ) | C/A No.: 08-cv-670-GRA | |
| a Delaware Limited Liability Company, ) | | |
| and Magneti Marelli Powertrain, S.p.A., ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | ORDER | |
| v. ) | (Written Opinion) | |
| ) | | |
| Pierburg, Inc., a South Carolina ) | | |
| Corporation, and Pierburg GmbH, ) | | |
| ) | | |
| Defendants. ) | | |
| _____ ) | | |

This matter comes before the Court on Pierburg, Inc.'s (Pierburg's) motion for judgment on the pleadings, filed March 25, 2008, and Pierburg GmbH's motion for judgment on the pleadings filed, June 3, 2008.  This Court will deal with each motion separately.

**Factual Background**

In mid-March 2003, Pierburg and Magneti Marelli Powertrain USA, LLC (Magneti) entered into a "General Purchasing Agreement" (GPA). (Amend. Compl., Ex. A.)  Pursuant to this agreement and its annexes, Magneti would manufacture and sell the defendant two tool-cast automotive components designated L-6 and L-850.  In order to create these parts, Magneti incurred significant up-front, tooling costs.  In Annex 6 to the GPA (Tooling Agreement), Pierburg agreed to amortize these costs by paying an additional fee per part for the lifetime of the program, approximately 3

million parts.  (Amend. Compl., Exh. B at 8) (Tooling Agreement.)  The Tooling Agreement also provided that:

> (c)   If Buyer's customer reduces or eliminates requirements and Buyer therefor will not place orders to Seller for the agreed upon volume for the tool amortization as stated in Attachment 1, and Buyer is not awarding additional business with Seller, either with the current or similar part design, Buyer shall reimburse Seller for the non-amortized tooling costs within 60 days net after receipt of invoice.  If buyer is placing orders for additional business with Seller, which will include a total volume of the difference remaining from the above mentioned business, the non-amortized tooling costs for the tooling as shown in Attachment 1 will be waived by Seller.

(*Id.*)  In April 2005, the parties entered into a new agreement.

Though it is unclear exactly what led to the April 27, 2005 Letter Agreement (Amend. Compl., Exh. C) (Letter Agreement.), it is clear the parties intended to change some terms of the original GPA.  "The purpose of this letter is to confirm that terms and conditions of the agreements reached between our companies . . . with respect to the resolution of the various disputes between [the litigants] incident to [the GPA] . . . and the agreements (including so called quality agreements), purchase orders, instruments and other writings referenced therein or executed in connection therewith (collectively, the "Purchase Agreement Documents")." (*Id.* at 1.) Amongst other specific price and volume modifications, relevant to this action, the Letter Agreement stated:

> We have agreed as follows:

. . .

5. From and after March 31, 2007, Magneti shall not longer produce the [L6] Casing the Purchase Agreement Documents as hereby amended shall expire and shall have no further obligation to Pierburg under the Purchase Agreement Documents for the [L6] Casting;

6. From and after March 31, 2006, Magneti shall no longer produce the [L850] Casing, the Purchase Agreement Documents as hereby amended shall expire and shall have no further obligation to Pierburg under the Purchase Agreement Documents for the [L850] Casting;

7. Magneti shall not be required to produce any other Products for Pierburg, nor Products in excess of a total of up to 650,000 units of Products accounted from April 1, 2005, and up to the termination dates as agreed to in Sections 5 and 6 above;

8. The prices as set forth in this letter are *in lieu of* any other prices which are or may be determined in accordance with the Price Agreements currently in force which are part of the Purchase Agreement Documents;

9. Pierburg and Magneti, on behalf of themselves and any parent, divisions, affiliates, and all successors and assigns, hereby fully and completely release each other from all claims of every kind (including without limitation attorney's fees and costs) which they may have, had, or may hereafter have based on the Purchase Agreement Documents at any time existing or occurring on or prior to the date of this letter. However, this will not preclude Pierburg from enforcing any rights and remedies it may have against Magneti based upon or arising out of any warranty claim for

>                              which Magneti is responsible for under the
>                              Purchase Agreement Documents (as hereby
>                              amended) due to defective materials and/or
>                              workmanship.

(*Id.* at 2.) Magneti S.p.A. and Pierburg GmbH, the respective parent corporations to Plaintiff Magneti and Defendant Pierburg, signed the Letter Agreement. As Pierburg and Magneti wound down their relationship under the terms of the Letter Agreement, the purchase orders reveal that Pierburg continued to pay the per-part amortization rate as outlined in the Tooling Agreement.

On July 13, 2007, Magneti sent Pierburg a bill for the unamortized tooling costs in the amount of $674,939. The letter states in relevant part: "You (Defendant) will recall that pursuant to the agreement between [Magneti an Pierburg, Pierburg] is responsible for $600,000 related to the L-6 casting, to be amortized over 3 million units and $500,000 related to the L-850 casting, to be amortized over 1 million units. As noted, the agreement provided that such amounts were to amortized over the life of the respective programs and that any unamortized amounts still owing upon the end fo the programs, I would be paid in full by [Defendant]." Defendant refused to pay this bill. This suit followed.

## Procedural Background

Magneti filed this suit on February 27, 2008. On March 25, 2008, Pierburg answered, counterclaimed, filed a motion to dismiss, and a motion for judgment on the pleadings. In response to the motion to dismiss for failure to join a necessary party under Rule 12(b)(7) of the Federal Rules of Civil Procedure, Magneti agreed to amend

the complaint to add Plaintiff Magneti Marelli Powertrain S.p.A., Magneti's Italian parent company, and Defendant Pierburg GmbH, Pierburg's German parent company. Pierburg agreed to withdraw its motion to dismiss once Magneti amended the complaint. On May 14, 2008, Magneti amended its complaint to comport with the agreement between the parties. Pierburg and Pierburg GmbH answered the amended complaint on June 3, 2008. Pierburg GmbH filed counterclaims in its answer, and both Plaintiffs answered. Subsequently, Pierburg GmbH filed a Rule 12(c) motion for judgment on the pleadings on June 3, 2008.

## **Standard of Review**

Defendants moved under Rule 12(c) of the Federal Rules of Civil Procedure for judgments on the pleadings. Rule 12(c) provides that: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. Pro. 12(c).[1]  A motion for judgment on the pleadings pursuant

---

[1] On April 24, 2008, when Magneti originally responded to Pierburg's Rule 12(c) motion, it argued that the pleadings were not closed, and therefore, Pierburg's Rule 12(c) motion should be dismissed as premature. At that time, Magneti had yet to file its amended complaint, and it had not answered Pierburg's counterclaim. However, while this Court awaited the necessary responsive motions, Magneti and Magneti S.p.A. filed their amended complaint; both Defendants filed answers; in its amended answer, Pierburg filed a counterclaim; and both Plaintiffs answered that counterclaim. Therefore, the pleadings are now indisputably closed.

Plaintiffs do not argue that Pierburg GmbH's June 3, 2008 motion is premature. However, this Court cannot assume that Magneti is abandoning this argument against Pierburg's March 25, 2008 motion.

Though the Court will use Rule 12(c) rubric to rule on Pierburg's March 25, 2008 motion, if this Court were to find Pierburg's March 25, 2008 motion premature, it has the authority to treat a Rule 12(c) motion as a Rule 12(b)(6) motion. *Kutsmeda v. Trust one Mort. Corp.*, Civ. A. No.:3:05-cv-518-JRS, 2005 WL 3357347 at *2 (E.D. Va. Dec. 9, 2005) ("When a court cannot definitively deem the pleadings closed, it is within the court's discretion to treat a Rule 12(c) motion for judgment on the pleadings as a Rule 12(B)(6) motion to dismiss."). The standard for reviewing a Rule 12(b)(6) motion is identical to the standard for reviewing a Rule 12(c) motion. *Burbach Broadcasting Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). And pleadings need not be closed for purposes

to Rule 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6). *Burbach Broadcasting Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). A court may grant the relief only if there is no issue of fact and the moving party is entitled to judgment as a matter of law. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999); *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, all reasonable inferences are afforded to the non-moving party. *See Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130,1134 (4th 1993). These motions should only be granted "in very limited circumstances." *De Sole v. United States*, 947 F.2d 1169, 1171(4th Cir. 1991).

### Discussion

#### *A.    Pierburg's Motion*

Pierburg argues that it deserves a judgment on the pleadings[2] for two reasons: (1) the plain language in the GPA and Letter Agreement compels a judgment in favor of the defendants (Pl's March 25 Mem. at 3); and (2) Magneti released this claim in

---

of Rule 12(b)(6). Fed. R. Civ. P. Rule 12(b)(6).

Regardless of whether Pierburg's March 25, 2008 Rule 12(c) motion was premature, this Court would apply the same standard and reach the same result. Therefore, this Court need not determine whether Pierburg's Rule 12(c) motion is still premature.

[2] In its June 3, 2008 supplemental memorandum, Pierburg states that, regardless of the addition of new parties and new factual allegations in the plaintiffs' amended complaint, Pierburg's original arguments for judgment on the first complaint also compel a judgment on the amended complaint. Similarly, Magneti cites to its amended complaint throughout its supplemental response. It appears neither side opposes this Court simply applying Pierburg's original arguments and Magneti's original defenses to the amended complaint. Therefore, this Court will treat Pierburg's March 25, 2008 Rule 12(c) motion as one for judgement on the plaintiffs' amended complaint.

the Letter Agreement. (*Id.* at 7.) The Court will deal with each argument separately.

### *1.     Clear and Unambiguous Language*

Pierburg argues that the Letter Agreement "is clear, unambiguous, and capable of an immediate legal construction that compels the dismissal of the [plaintiffs'] claims." (*Id.* at 4.)  Pierburg argues that the Letter Agreement wholly replaces the terms of the GPA, and that Magneti's complaint fails because it does not allege that Pierburg breached the terms of the Letter Agreement.  Magneti argues that, though the Letter Agreement may modify certain terms of the GPA, it does replace the GPA completely, and Pierburg breached a term of the GPA that was unmodified by the Letter Agreement.  In other words, Magneti and Pierburg dispute whether the Letter Agreement constitutes a modification or a novation of the GPA.

"A novation is an agreement between all parties concerned for the substitution of a new obligation between the parties with the intent to extinguish the old obligation." *Wayne Dalton Corp. v. Acme Doors, Inc.*, 394 S.E.2d 5, 7 (S.C. Ct. App. 1990).  Both parties must intend to create a novation. *Adams v. B D, Inc.*, 377 S.E.2d 315 (1989).  "The circumstances attending the transaction alleged to be a novation must show the intention to substitute a new obligation in place of the existing one." *Wellman, Inc. v. Square D Co.*, 620 S.E.2d 86, 92 (S.C. Ct. App. 2005).

There is a question of fact as to whether both parties intended the Letter Agreement to replace the entire GPA or just certain terms therein.  Magneti plead that

the Letter Agreement is a mere modification of the GPA and, therefore, it does not affect any terms it did not specifically identify, such as the agreed upon volume for the retooling costs. (Amend. Compl. at ¶ 12.)  Contrary to Pierburg's contention, nothing in the language of the Letter Agreement or the Tooling Agreement, both attached to the complaint, directly contradict this allegation.

Though the Letter Agreement contains sweeping language that purportedly replaces all of the prices mentioned in the GPA, the Letter Agreement never mentions Magneti's up-front, retooling costs.  Similarly, it does not expressly alter the "agreed upon volume [of parts] for the tool amortization as stated in Attachment 1[.]" (Tooling Agreement.)  Further, an exhibit to Magneti's motion demonstrates that Pierburg continued to pay the per-unit tooling cost as laid out in the Tooling Agreement *after* the Letter Agreement was signed.  This supports Magneti's contention that the Letter Agreement did not affect the Tooling Agreement.

In the light most favorable to Magneti, the Court finds that there is a question of fact as to whether both parties intended the Letter Agreement to replace or modify the GPA.  Therefore, this Court DENIES Pierburg's motion.

*2. Release Clause*

Next, Pierburg argues that Magneti released the immediate claim in the release clause of the Letter Agreement.  Pierburg argues that Magneti's claim arose on the day that it signed the Letter Agreement because, "[a]t that time, [Magneti] knew that the 650,000-unit cap was the total volume of production over which it must amortize its

capital expenditures from Pierburg." (Def's Mot. at 7.)  Magneti rebuts this by stating that its claim for unamortized tooling costs did not occur until Pierburg violated the terms of the Tooling Agreement by failing to either purchase the agreed upon volume for tooling amortization in Attachment 1 or award more business to Magneti.

The issue of when Magneti's claim for the unamortized tooling costs arose is contingent upon the determination of the aforementioned question of fact. If the Letter Agreement replaced the Tooling Agreement as a whole, then it appears Magneti did release its immediate claim. However, if the Letter Agreement only modified specific portions of the GPA, excluding the Tooling Agreement, then Magneti did not release its immediate claim. Pierburg's instant argument must fail because its resolution depends on a separate question of fact.

For the reasons aforementioned, Pierburg's March 25, 2008 Rule 12(c) motion is DENIED.

### B.    *Pierburg GmbH's Rule 12(c) Motion*

Pierburg Gmbh argues that it cannot be liable for a breach of the GPA because it was not a signatory to the GPA. Plaintiffs rebut this by arguing that, because Pierburg GmbH signed the Letter Agreement, it "rendered itself subject to liability for a breach of the Letter Agreement, the GPA which the Letter Agreement expressly modified and to which it referred, and the other annexes arising out of the GPA, including the Tooling Agreement which Defendants are alleged to have breached." (Pls' Mot. at 7.)

The first sentence of the Letter Agreement states:

> The purpose of this letter is to confirm that terms and conditions of the agreements reached between our companies also on behalf of our U.S. subsidiaries [Magneti] and [Pierburg] incident to [the GPA] dated on or about March 14, 2003, and the agreements (including so called quality agreements), purchase orders, instruments and other writings referenced therein or executed in connection therewith.

(Letter Agreement.)  In the light most favorable to the plaintiffs, "the agreements reached between our companies" can be construed as Pierburg GmbH's assent to be bound by the terms of the GPA.  Therefore, as plead, Pierburg GmbH could be liable for the breach of the GPA.

Pierburg GmbH then repeats Pierburg's arguments related to the plain language of the contracts and the release clause in the Letter Agreement. (*Supra* § A.)  The questions of fact that preclude judgment for Pierburg on these issues also prohibit judgment on the pleadings for Pierburg GmbH.

Therefore, Pierburg GmbH's Rule 12(c) motion is DENIED.

## **Conclusion**

After considering the litigants' motions, the record, and relevant case law, this Court finds that particular questions of fact preclude an entry of judgment on the pleadings for the defendants.  Therefore, both motions are DENIED.

IT IS THEREFORE SO ORDERED THAT Defendant Pierburg's motion for judgment on the pleadings be DENIED.

IT IS FURTHER ORDERED THAT Defendant Pierburg GmbH's motion for judgment on the pleadings be DENIED.

IT IS SO ORDERED.

                                             _____
                                             G. ROSS ANDERSON, JR.
                                             UNITED STATES DISTRICT JUDGE

July 9, 2008
Anderson, South Carolina